**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230116-U

Order filed November 14, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0116 Circuit No. 19-CF-730 |
| SAMANTHA JO ALEXANDER, | ) ) ) | Honorable Thomas W. Cunnington, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Counsel provided ineffective assistance when he agreed to the inaccurate clarification of a jury instruction.

¶ 2     Defendant, Samantha Jo Alexander, appeals her conviction for leaving the scene of an accident involving death or personal injury, arguing, *inter alia*, counsel provided ineffective assistance when he agreed to an inaccurate clarification of a jury instruction and allowed the State to refer to highly prejudicial other-crimes evidence that defendant had been using and driving while under the influence of Xanax. We vacate and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with leaving the scene of an accident involving death or

personal injury (625 ILCS 5/11-401(a) (West 2018)) and unlawful possession of a controlled

substance (720 ILCS 570/402 (West 2018)). Prior to trial, defendant filed a motion *in limine*

seeking to preclude the State from arguing that defendant "did not have to know that she hit a

person at the time of the alleged event." Defendant's motion was granted without objection.

Defendant also moved to sever the two counts, which the trial court denied.

¶ 5          Defendant's case proceeded to a jury trial on August 8, 2022. On the morning of trial,

defendant pled guilty to unlawful possession of a controlled substance. At trial, the following

evidence was adduced: on October 14, 2019, at approximately 11 a.m., Dustin McKinney was

driving home and saw a car driving "all over the road." McKinney observed the car veer off the

road three times.  On the third time, it struck a pedestrian who was "checking the mailbox." The

car did not brake after striking the pedestrian but slowed down and then turned left at a stop sign.

McKinney stopped to help the pedestrian, called 911, and provided a description of the car.

According to an accident reconstructionist, defendant's vehicle was traveling at approximately

25.7 miles per hour. The victim died of craniocerebral injuries from being hit by a motor vehicle.

¶ 6          Bailey Theisen, defendant's next-door neighbor, testified she was home between 1 and

3 p.m. and observed defendant pull into her driveway more quickly than usual. She watched

defendant park her car close to the back of the driveway instead of near the front porch, where

she normally parked. After parking, Theisen saw defendant walk around the front of the car,

pause for approximately five seconds inspecting the passenger side of the car, and then quickly

enter her house.

¶ 7        Police located defendant's car around 5:30 p.m. The car had damage to the passenger side headlight, side mirror, hood, front fender, grille, "A-pillar," and windshield, and strands of hair were embedded in the broken glass. Defendant was asleep in her home but when officers arrived she agreed to accompany officers to the sheriff's department to be interviewed.

¶ 8        Defendant's interview was played for the jury. Defendant stated that she did not know why she had been taken to the sheriff's office, but believed it was related to a ticket for expired registration. During her interview, defendant told officers she was "hanging out with a friend up in Joliet" the previous evening, and returned home around 5 a.m. She did not feel tired, so she cleaned her house and drove to Kankakee at approximately noon or 1 p.m. to run errands. On her way back home, she "swerved slightly and then hit something" on the side of the road. Defendant believed she "sideswiped a mailbox or something." However, she did not know exactly what happened or what she hit because she was either "looking for something on the floor" or changing the radio station. She saw that her windshield was cracked. She panicked and kept driving because she did not have car insurance. When defendant was told during the interview that she hit a person, she became visibly upset and emotional. While crying, defendant stated that she thought she hit a mailbox.

¶ 9        As the interview continued, defendant stated that she took Xanax that day, including two pills the previous evening and five pills since 5 a.m. that day. Although she previously had a prescription for Xanax, she no longer had health insurance. She denied getting "high" from taking Xanax and instead said it made her feel "good," "energetic," and "motivated to get things done." She also said it relieved her anxiety and made her "feel like [she was] supposed to feel." Defendant agreed with the officer that the Xanax explained why she had not slept the previous evening.

3

¶ 10    Defendant did not testify. However, three character witnesses testified that defendant was known for being an honest person.

¶ 11    In his closing argument, defense counsel stated that "the only real issue in this case" was whether defendant knew the accident involved another person. The instructions the court gave the jury included the following instruction:

> "To sustain the charge of leaving the scene of an accident involving death or personal injury, the State must prove the following propositions: First proposition, that the defendant was the driver of a vehicle involved in a motor vehicle accident; and second proposition, that the motor vehicle accident resulted in a death or personal injury; and third proposition; that the defendant knew an accident had occurred; and fourth proposition, that the defendant knew that the accident involved another person; and fifth proposition, that the defendant failed to immediately stop her vehicle at the scene of the accident and remain at the scene of the accident until the defendant had performed the duty to give information and render aid; and sixth proposition, that the defendant failed to report the accident within one half hour after the motor vehicle accident giving the place of the accident, the date, the approximate time, the defendant's name and address, the registration number of the vehicle driven, and the names of all other occupants of that vehicle."

During deliberations, the jury sent a note to the court, which read, "4th Prop.—Does the defendant know the accident involved another person—Is this at the point of impact? or at *any* time in the future? Can we have some clarification?" The court gathered the parties, and the following colloquy occurred,

"THE COURT: *** As I looked back at the jury instructions, the offense says that the person commits the offense when they don't stop and render aid and give information or [*sic*] within one half hour after the accident.

So maybe one possible response could be, [t]he mental state required would be knowledge at the time of the accident or within one half hour after.

[DEFENSE COUNSEL]: I think we'd have to be at the time of the accident, and that's what the State eloquently argued. But I can live [with] within a half hour."

¶ 12    Thereafter, the court provided the jury with a written clarification stating, "[t]he mental state required would be knowledge at the time of the accident or within one half hour after." The jury then sent a second note informing the court: "We cannot agree on the 4th Prop. We are at 8-4 guilty on this proposition. We 100% agree on 1, 2, 3, 5 + 6." The court responded that no further clarification could be provided and instructed the jury to continue deliberating.

¶ 13    Defendant was found guilty and sentenced to concurrent terms of five years' imprisonment for leaving the scene of an accident involving death or personal injury and one year imprisonment for unlawful possession of a controlled substance. Defendant filed a motion to reconsider her sentence, which was denied. Defendant appealed.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, defendant argues, *inter alia*, her counsel provided ineffective assistance when he allowed the court to answer the jury's question with an incorrect explanation of the mental state necessary to convict defendant. Criminal defendants are guaranteed the right to counsel by the United States and Illinois Constitutions. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To determine whether defendant has received effective assistance of counsel, we employ a two-part test wherein defendant must

5

prove (1) counsel rendered deficient performance, and (2) counsel's deficient performance prejudiced defendant. *People v. Jones*, 2023 IL 127810, ¶ 51.

¶ 16 To establish ineffective assistance, "a defendant first must establish that his counsel's performance was so deficient that his representation fell below an objective standard of reasonableness." *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). Prejudice is established by showing that, "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Stated another way, "the question is whether a reasonable probability exists that, absent the alleged errors, the fact finder would have entertained a reasonable doubt of guilt." *People v. Bowman*, 325 Ill. App. 3d 411, 428 (2001). A defendant must satisfy both prongs of the *Strickland* test to establish ineffective assistance of counsel. *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 17 Strategic choices made by defense counsel following a thorough investigation into the law and facts are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Matters of trial strategy generally include "whether to offer certain evidence or call particular witnesses, whether and how to conduct cross-examination, what jurors to accept or strike, what motions to make, whether to seek substitution or recusal of a judge, and what instructions to tender." *People v. Lowry*, 354 Ill. App. 3d. 760, 766 (2004). Nonetheless, defense counsel's failure to challenge a court's erroneous response to a jury's questions may fall outside the realm of trial strategy when it is clear the jury is confused, risks misapplying the law, and there is no strategic benefit to counsel's action or inaction. See *People v. Lewis*, 2022 IL 126705, ¶ 69; *cf. Jones*, 2023 IL

127810, ¶ 54 (no ineffective assistance found where counsel made a strategic choice to omit a clarifying instruction).

¶ 18        Section 11-401 of the Illinois Vehicle Code (625 ILCS 5/11-401 (West 2020)) provides in relevant part:

> "(a) The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary.

> (b) Any person who has failed to stop or comply with the requirements of paragraph (a) shall, as soon as possible but in no case later than one-half hour after such motor vehicle accident, or, if hospitalized and incapacitated from reporting at any time during such period, as soon as possible but in no case later than one-half hour after being discharged from the hospital, report the place of the accident, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred. No report made as required under this paragraph shall be used, directly or indirectly, as a basis for the prosecution of any violation of paragraph (a)." *Id.* § 11-401(a), (b).

¶ 19        To sustain a violation of section 11-401, the State must prove defendant knew the accident involved another person. *People v. Meuris*, 2016 IL App (2d) 140194, ¶ 16. The

7

knowledge requirement adheres "at the time of the accident." *People v. Russell*, 2022 IL App (2d) 190733, ¶ 38. The jury in *Russell* posed a similar question to the court during deliberations. There, as here, the jury asked whether the knowledge requirement pertained to the time of the accident or within a defined period of time. *Id.* ¶ 28. The Second District concluded the jury instruction—the same jury instruction provided in the case at bar—was "readily understandable" when it defined the State's burden. *Id.* ¶ 38. The court found no error when the circuit court responded to the jury's question by declining to provide clarification and referring to the already-provided jury instructions, which "clearly required the jury to find that defendant knew that the accident involved another person at the time of the accident." *Id.*

¶ 20        Where the instructions to the jury are readily understandable and sufficiently explain the relevant law, the circuit court has discretion to decline to answer the jury's inquiries, particularly "where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another." *People v. Childs*, 159 Ill. 2d 217, 228 (1994). However, jurors are entitled to clarification on points of "law arising from facts about which there is doubt or confusion." *Id.* at 229. "When a jury makes explicit its difficulties, the court should resolve them with specificity and accuracy." *Id.*

¶ 21        Based on *Russell* and the available jury instructions, which correctly and clearly describe the State's burden, we find the court erred when it informed the jury that the State had to prove defendant knew she struck a person at the time of the offense "or within one half hour after." Counsel's failure to object to this erroneous instruction cannot be described as a strategic choice because the jury exhibited clear confusion about the issue and there was no strategic benefit to defendant in expanding the time frame within which the State might establish defendant's

8

knowledge of the offense. An accurate understanding of the State's burden was critical to defense counsel's strategy, and there was no strategic reason to agree to a misstatement of that burden, particularly one which granted the State a wider time frame in which to prove the offense.

¶ 22     We find our supreme court's decision in *Lewis* supports our finding that counsel's agreement and failure to object was not the product of trial strategy. In that case, defendant was charged with involuntary sexual servitude of a minor. *Lewis*, 2022 IL 126705, ¶ 1. Defense counsel presented a defense of entrapment and offered a corresponding jury instruction. *Id.* ¶ 22. During deliberations, the jury requested definitions of certain terms, which were "material words in the entrapment instruction." *Id.* ¶ 67. The court declined to offer additional definitions, and defense counsel acquiesced in the court's decision, despite the jury's obvious confusion about the nature of the entrapment defense. *Id.* ¶¶ 25-26. The Illinois Supreme Court held that defense counsel erred by failing to ask the court to provide the requested definitions, resulting in "the jurors being improperly instructed on how to apply the legal terms to the facts and prevent[ing] them from analyzing the evidence to determine [the] defendant's guilt." *Id.* ¶ 70. The court found no strategic basis for failing to request definitions which were readily available and necessary to determine whether the State met its burden. *Id.* ¶ 69.

¶ 23     Here, as in *Lewis*, there was no strategic basis for allowing the jury to potentially convict defendant based on a substantive legal misunderstanding. See *id.* We therefore find counsel's representation "fell below an objective standard of reasonableness." *Hickey*, 204 Ill. 2d at 613. Moreover, there is a reasonable probability that, but for counsel's deficient performance, "the results of the proceeding would have been different." *Houston*, 229 Ill. 2d at 4. At trial, defense counsel admitted every other element of the offense. The only defense presented was defendant's

9

ignorance at the time of the accident that she had struck another person. The jury's note to the court made it clear they were confused about the timing of the knowledge requirement. The jury was entitled to accurate instructions. See *Childs*, 159 Ill. 2d at 228-29. The court's inaccurate response prejudiced defendant and rendered the proceedings "fundamentally unfair." *Lowry*, 354 Ill. App. 3d at 768. Consequently, counsel provided ineffective assistance of counsel by failing to object and explicitly agreeing to the inaccurate response or provide an accurate clarification, "result[ing] in the jurors being improperly instructed on how to apply the legal terms to the facts and prevent[ing] them from analyzing the evidence to determine defendant's guilt." *Lewis*, 2022 IL 126705, ¶ 70.

¶ 24 Therefore, we vacate defendant's conviction and remand the cause to the circuit court for a new trial. Moreover, we find the evidence sufficient to avoid the possibility of double jeopardy. See *People v. Taylor*, 76 Ill. 2d 289, 309 (1979).

¶ 25 III. CONCLUSION

¶ 26 The judgment of the circuit court of Kankakee County is vacated and remanded for further proceedings.

¶ 27 Vacated and remanded.