2025 IL App (1st) 240123-U

No. 1-24-0123

Order filed October 22, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 10343 |
| | ) | |
| RASHIDI BALEWA, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction is affirmed, where he procedurally forfeited his contention that the trial court's alleged "blanket" policy against standby counsel constituted a failure to exercise its discretion and he is unable to establish plain error.

¶ 2    Following a bench trial where he represented himself, defendant Rashidi Balewa (also referred to as Rashoud T. Gayden in the record) was found guilty of one count each of aggravated kidnapping, aggravated battery, and unlawful restraint. The trial court merged the unlawful restraint count into the aggravated kidnapping count and sentenced Balewa to eight years' imprisonment for aggravated kidnapping, concurrent to a four-year term for aggravated battery.

On appeal, Balewa contends that he was denied a fair trial when the trial court failed to exercise its discretion to appoint standby counsel and instead adopted a "blanket policy" against standby counsel. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      Following a June 25, 2019, incident, Balewa was charged with aggravated kidnapping (counts I-IV), aggravated criminal sexual abuse (counts V-VII), and indecent solicitation of a child, aggravated battery, child abduction, and unlawful restraint (counts VIII-XI).

¶ 5      On August 28, 2019, defense counsel informed the trial court that he believed Balewa was unfit for trial. The court ordered a behavioral clinical examination (BCX). Balewa opposed an evaluation, stating that he had the right to represent himself. The court agreed that Balewa had the right to self-representation, but not the right to refuse the evaluation.

¶ 6      Following the evaluation, the court noted that the forensic psychiatrist opined that Balewa was fit for trial.

¶ 7      On March 10, 2020, Balewa apprised the court that he wanted to proceed *pro se* and asked to file five motions. The court inquired if Balewa was on any medication, and Balewa answered no. The court next inquired about Balewa's education, and Balewa responded that he had completed three years of high school and possessed a GED. The court asked whether Balewa had represented himself before, and Balewa answered, "[m]aybe, 8 years ago." When questioned if the prior case was in Illinois, Balewa answered, "Okay."

¶ 8      The court stated that although Balewa knew "all the players" and had done "this before," the court needed to determine his capacity to make the decision to proceed *pro se*. The court stated

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

that presenting a defense requires adherence "to various technical rules" and is not merely a "matter of telling one's story." The court noted it would require Balewa to abide by those rules and would treat Balewa as an attorney. The court asked if Balewa understood that the State was represented by experienced attorneys, and that proceeding *pro se* may "allow" the State an advantage. Balewa indicated that he understood. The court advised that if Balewa represented himself, he could not challenge his competence on appeal.

¶ 9    The court reiterated that it would not give Balewa "special consideration" and that he would not receive extra time in the law library to prepare. Balewa indicated that he understood. The court informed Balewa that he could change his mind prior to the start of trial. The court then stated:

> "There will not be a standby [c]ounsel. I don't believe in stand-by lawyers. So there is not going to be some guy standing there for you to ask questions. That's not a good idea.
>
> If you are doing this, you're going to be on your own all the way through. You understand that?"

Balewa answered affirmatively and the court allowed defense counsel to withdraw.

¶ 10    On August 20, 2020, the court reiterated that if Balewa represented himself, he would be treated as an attorney and not given "special dispensation." Balewa stated that he did not want an attorney.

¶ 11    On September 11, 2020, the court again asked Balewa if he wished to represent himself and he answered affirmatively. The court stated it wanted to ensure that Balewa was intelligently waiving counsel, because the court was "not appointing anybody on a stand-by basis." The court again inquired as to Balewa's age and education. Balewa answered that he was 33 years old, had completed eleventh grade, and had a GED. Balewa denied taking medications for "any mental

disability," but stated he was taking antidepressants. Upon further questioning, Balewa stated that he represented himself in 2006, and that the case ended in "drug rehab."

¶ 12    The court explained that presenting a defense required compliance with "technical rules," and noted the State would be represented by experienced attorneys. The court again admonished Balewa that proceeding *pro se* might allow the State an advantage and stated that, should Balewa "lose," he could not challenge his representation on appeal. Balewa indicated he understood. The court informed Balewa that he could not change his mind once trial began, and he would not be appointed a "stand-by lawyer." Balewa stated that he understood and wished to represent himself.

¶ 13    The court again questioned Balewa about his decision to proceed *pro se* on October 27, 2020. Balewa answered consistently with his prior answers, stated he was taking antidepressants, and denied having "any limitations." The court repeated its admonishment that "presenting a defense [was] not a simple matter of telling one's story." It again noted that the State would be represented by experienced attorneys, and that a person unfamiliar with legal procedures may allow the State an advantage. Balewa stated he understood. The court reminded Balewa that a defendant who represented himself could not challenge his "competency" on appeal and asked if Balewa understood. Balewa answered affirmatively.

¶ 14    The court stated that it would treat Balewa as an attorney and that if Balewa wished to object or file a motion, he would have to do so. The court asked whether Balewa understood that an attorney provides "important assistance," and Balewa answered yes. The court reiterated that Balewa could not request counsel once trial began. Balewa indicated that he understood. The court finally stated that it would not appoint standby counsel, as it "causes more difficulty than *** anything else." The court believed that decision was within its "discretion," and noted it was

choosing "not to do so." The court inquired whether, "understanding all of those things," Balewa still wished to represent himself. Balewa answered in the affirmative.

¶ 15    At the next court date, the trial court explained the pending charges and possible penalties and asked if Balewa understood. Balewa answered yes. The court inquired if Balewa understood that he was entitled to an attorney, and that the court would appoint one "[today]," if he wanted one. Balewa replied that he wanted to represent himself.

¶ 16    The court again admonished Balewa to ensure that he "really" was making "an intelligent decision." The court asked Balewa about his age, education, and whether he had mental health treatment. Balewa answered these questions consistently with his prior answers. The court verified that Balewa was not taking psychotropic medication. Balewa stated that he was taking antidepressants, but they did not interfere with his ability to understand. The court asked whether Balewa understood that the court's role was to determine his guilt and not to act as his advocate. Balewa answered affirmatively. The court again asked Balewa if he understood that he would be treated as an attorney, and Balewa answered yes.

¶ 17    The court questioned Balewa about his prior self-representation. Balewa informed the court that the case involved a burglary charge, and that he could have "beat it" but "copped out." At the time, he was "into drugs" and was offered rehabilitation, so he "took that." The court then clarified whether Balewa represented himself at a trial. Balewa stated that he was represented by a public defender at a prior trial, where he had been acquitted. Balewa asserted, however, that public defenders had "large caseloads" and chose which cases to prioritize, and that his prior case was repeatedly continued, despite his request for a speedy trial.

¶ 18    The court asserted that it was "not trying to talk [Balewa] out" of self-representation but stated that this was a "very serious case," and offered to appoint an attorney if Balewa wanted one.

The court reiterated that Balewa's defense may be "diminished" by his role as both the attorney and the accused, and Balewa stated that he understood. The court repeated that Balewa (1) would not receive special consideration or extra time, and (2) could not change his mind once trial began. Balewa stated that he understood. The court finally asked if Balewa was choosing to proceed *pro se* of his own free will and Balewa said yes. Balewa reiterated that he wanted to represent himself.

¶ 19    On November 2, 2020, a bench trial commenced. Prior to opening statements, the court again admonished Balewa of the pending charges and possible penalties. The court again questioned Balewa as to his age, education, prior self-representation, and whether he was suffering from a mental condition or taking psychotropic medication. Balewa's answers were consistent with those at prior proceedings. Upon further questioning, Balewa acknowledged that an attorney would have experience with trial procedures, that the State would be represented by attorneys, and that his self-representation could allow the State a tactical advantage. Balewa acknowledged that if he represented himself at trial, he could not raise his ineffectiveness on appeal. Balewa understood he would be treated as an attorney. The court asked whether Balewa was prepared, and Balewa answered in the affirmative.

¶ 20    The court noted that it was using its discretion in deciding not to appoint standby counsel "at this point in time." Balewa indicated he understood. When the court inquired if Balewa wished to proceed *pro se* or have an attorney represent him, Balewa chose to represent himself and stated he was ready for trial.

¶ 21    A.A. testified that she was 14 years old on June 25, 2019. Around 10:30 p.m., she was riding her bicycle when she heard someone yell. A.A. stopped, looked back, and observed Balewa, whom she identified in court, approaching. Balewa asked for directions, and they conversed. Once A.A. felt "comfortable," they walked together. Although A.A. had not previously spoken to

Balewa, she had previously seen him in the neighborhood. She told Balewa that she was 14 years old and declined his offer of vodka.

¶ 22    When they reached Balewa's apartment, A.A. did not immediately enter; rather, she tried to make it a "group activity" by inviting a friend. When her friend did not arrive, A.A. entered the apartment and sat in the living room. Balewa "almost immediately" went to another room, then returned and sat on a couch. A.A. saw a screwdriver, and upon "instinct," she retrieved the screwdriver and placed it in the pocket of her shorts. Balewa then asked whether she would feel uncomfortable if he touched her. A.A. did not know how to answer and just looked at Balewa. A short time later, A.A. was uncomfortable and stated that she had to leave because her mother was "blowing up" her phone. Balewa rose and stood before A.A.

¶ 23    A.A. got on her bicycle, which she had brought inside. Balewa stood between the front wheel and the door, blocking her exit. He tried to convince A.A. to stay by rubbing her cheek and touching her breast. She moved his hand and tried to push him off her. At this point, Balewa pulled down his shorts and showed A.A. his "disgusting, ugly d***." Balewa tried to get A.A. to touch his penis, but she refused and told him to "get off [her]." A.A. was able to get Balewa away from the front door once he offered her a small pink pill. They went to the bathroom where Balewa filled a cup with water. Ten seconds later, Balewa closed the bathroom door. A.A. pushed Balewa because he would not let her exit. Balewa pushed her and choked her with both hands. A.A., who could not breathe, kicked Balewa. She exited the bathroom and fled the apartment.

¶ 24    As A.A. ran away, Balewa grabbed her bike and threw it down the stairs from his second-floor apartment. A.A.'s bike became stuck. Then, Balewa grabbed her from behind by her hair. A.A. turned and Balewa punched her in the mouth and choked her by placing his arm against her neck. A.A. could not breathe and was "seeing spots," so she retrieved the screwdriver from her

pocket and stabbed Balewa in the arm. Balewa refused to release A.A., so she stabbed him in the thigh, and he pushed her away. A.A. fled on her bike. Balewa chased her until she crossed a "big street," and Balewa did not follow. She discarded the screwdriver on her way home.

¶ 25     A.A. identified the screwdriver and the soiled shirt that she wore on June 25, 2019. She also identified photographs of herself taken at a police station on June 26, 2019, including one which depicted a cut on her lip caused when Balewa punched her. She also identified a photograph that she took of Balewa's identification on June 25, 2019.

¶ 26     These photographs are contained in the record on appeal. One depicts a young woman in shorts and a white shirt, another depicts a white collar with blood on it, and two depict bloody spots on a bottom lip. The record also contains a photograph of a driver's license bearing Balewa's name with a bottle in the background, and a photograph of a screwdriver amongst leaves.

¶ 27     During cross-examination, A.A. acknowledged that at some point before they arrived at Balewa's apartment, Balewa offered to go to "[his] place and smoke." She conceded that she told a nurse at the hospital that she drank one sip of vodka inside Balewa's apartment.

¶ 28     Stone Park police officer Robert Vicari spoke to A.A.—who was very upset and had blood on her shirt—shortly before midnight on June 25, 2019. Vicari photographed A.A. and collected her shirt. A.A. showed Vicari a cell phone photograph depicting Balewa's driver's license and a video she had taken. Vicari and other officers executed a search warrant at Balewa's address on June 28, 2019. Balewa was arrested and a buccal swab was taken. Vicari also recovered a screwdriver after A.A. took him to the block where she dropped it. Vicari inventoried A.A.'s cell phone, her shirt, the screwdriver, and the buccal swab.

¶ 29     The State presented evidence establishing that tests performed on the blood from A.A.'s shirt revealed DNA from which A.A. and Balewa could not be excluded. Additionally, Balewa

could not be excluded from the DNA recovered from the screwdriver, although it was only a six-loci match.

¶ 30    The court found Balewa guilty of aggravated kidnapping (count I of the indictment), aggravated battery (count IX), and unlawful restraint (count XI). Balewa was found not guilty of three other counts of aggravated kidnapping, aggravated criminal sexual abuse, indecent solicitation of a child, and child abduction. The court then appointed counsel for posttrial motions.

¶ 31    Balewa filed, through counsel, a motion and amended motion to reconsider the finding of guilt and/or for a new trial, alleging that the trial court's procedures regarding Balewa's decision to proceed *pro se* were erroneous. The motions further alleged that Balewa would have requested standby counsel but believed he was unable to due to the court's "blanket refusal" to consider standby counsel.

¶ 32    At a hearing on the motions, posttrial counsel acknowledged that the court stated it had the discretion to appoint standby counsel and was choosing not to do so and recognized that Balewa never requested standby counsel. Counsel stated that Balewa related to him that he would have requested standby counsel to locate a witness and bring that witness to court. However, Balewa thought there was "no point" in asking because "at each step" the trial court stated that it would not appoint standby counsel. The State responded that the decision to appoint standby counsel was within the trial court's discretion.

¶ 33    The court noted that each time Balewa was asked if he wanted an attorney, Balewa was "adamant" that he did not want one, despite the court's admonishments. The court then stated:

"stand-by counsel, it clearly just gives too much, too great an opportunity for error, confusion, internal strife amongst a stand-by attorney and a litigant, and it really puts an attorney and the litigant, for that matter, in unusual situations that I personally and

professionally do not feel are appropriate. And so I advised him of that all along. *** [I]t just invites error that does not have to be in a record, and so I will not do that."

¶ 34 The court denied Balewa's motion, merged the unlawful restraint count into the aggravated kidnapping count, and imposed an eight-year sentence for aggravated kidnapping, concurrent to a four-year term for aggravated battery. Balewa filed a motion to reconsider sentence, which was denied.

¶ 35 On January 18, 2024, our supreme court granted Balewa's motion for a supervisory order and directed this court to allow Balewa to file a late notice of appeal. See *Balewa v. Justices of the Appellate Court, First District*, No. 130331 (Ill. Jan. 18, 2024) (supervisory order). Balewa's late notice of appeal was filed in this court on April 12, 2024.

¶ 36                                    II. ANALYSIS

¶ 37 On appeal, Balewa contends that he was denied a fair trial when the trial court refused to exercise its discretion to appoint standby counsel and instead implemented a "blanket policy" against appointing standby counsel.

¶ 38 Before reaching the merits of Balewa's contention on appeal, we address the State's argument that Balewa has forfeited this argument because he never requested standby counsel, did not question or object to the trial court's decision not to appoint standby counsel, and first challenged the court's decision in a posttrial motion. See, *e.g.*, *People v. Ware*, 407 Ill. App. 3d 315, 350 (2011) ("[i]n order to preserve the issue for appeal, defendant was required to raise the issue by objecting at trial and in a posttrial motion.").

¶ 39 Balewa acknowledges that he never requested standby counsel but argues that this should not preclude the court's consideration of this issue for several reasons.

¶ 40    First, Balewa argues that the waiver rule is relaxed when (1) the trial court's conduct is at issue and (2) the issue is raised in a posttrial motion. See *People v. Dameron*, 196 Ill. 2d 156 (2001). He further argues forfeiture should be relaxed, where a request for standby counsel would have been futile considering the court's comments made it "clear" that such a request would have been rejected. See *People v. Taylor*, 357 Ill. App. 3d 642, 647 (2005) ("the fundamental importance of a fair trial and the practical difficulties involved in objecting to the trial court's conduct compel a less rigid application of the waiver rule").

¶ 41    However, our supreme court has held that relaxation of the forfeiture doctrine based on the trial court's conduct is to be reserved for "extraordinary" cases. *People v. McLaurin*, 235 Ill. 2d 478, 487-88 (2009). Specifically, "excusing forfeiture based on the trial judge's conduct is warranted when the trial court has overstepped its authority in the presence of the jury or when counsel is effectively prevented from objecting as any objection would have fallen on deaf ears." (Internal quotation marks omitted.) *People v. Johnson*, 238 Ill. 2d 478, 490 (2010).

¶ 42    We are not persuaded that this was one of those extraordinary cases. Here, the court's complained-of conduct was not before a jury. Moreover, while the court's statements might suggest a request for standby counsel would have had little likelihood of success, it does not follow that the court would have been deaf to such a request. Because Balewa never requested standby counsel, there is no basis in the record to conclude that the court would have ignored an argument that a denial of standby counsel was erroneous. Nothing in the court's words or conduct "effectively prevented" (*id.*) Balewa from requesting standby counsel. The record reveals that each time the court stated that it had the discretion to appoint standby counsel and explained why it was choosing not to, Balewa stated that he understood. Balewa never expressed a desire for standby counsel. We decline to speculate as to what the court may have done had Balewa asked for standby

counsel. Based on the record, we cannot say the forfeiture doctrine should be relaxed on account of the court's conduct.

¶ 43 Balewa next asserts that we should review his contention under the plain error doctrine. The plain error doctrine permits this court to review an unpreserved claim when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Pacheco*, 2023 IL 127535, ¶ 55.

¶ 44 Although Balewa argues for review under both prongs of the analysis, only first prong plain error would be applicable here. Our supreme court "has equated second prong plain error with structural error, which is the type of error that erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial." (Internal quotation marks omitted.) *People v. Johnson*, 2024 IL 130191, ¶ 55. "[S]tructural errors identified by the Supreme Court include a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." (Internal quotation marks omitted.) *Id*. ¶ 57.

¶ 45 Balewa cites no authority holding that the denial of standby counsel constitutes second prong plain error. Moreover, Balewa's argument is inconsistent with our supreme court's statement that "the right of self-representation does not carry with it a corresponding right to the assistance of a legal adviser; one choosing to represent himself must be prepared to do just that." See *People v. Gibson*, 136 Ill. 2d 362, 383 (1990); see also *People v. Ellison*, 2013 IL App (1st)

101261, ¶ 42 (a "*pro se* defendant does not have a right to standby counsel"). Consequently, we consider only whether any error that may have occurred constituted first prong plain error.

¶ 46   "Whether there is plain error is a question of law, which we review *de novo*." *People v. Williams*, 2022 IL 126918, ¶ 48. The first step in plain error review is determining whether an error occurred. *Id.* ¶ 49. A defendant has the burden of persuasion under either prong of plain error. *People v. Fort*, 2017 IL 118966, ¶ 18. If the defendant fails to sustain this burden, we must honor his procedural default. *People v. Russell*, 2022 IL App (2d) 190733, ¶ 44.

¶ 47   The sixth amendment to the United States Constitution guarantees criminal defendants both the right to assistance of counsel and the right to proceed *pro se*. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). As noted, however, "the right of self-representation does not carry with it a corresponding right to the assistance of a legal advisor." *Gibson*, 136 Ill. 2d at 383. "[O]ne choosing to represent himself must be prepared to do just that." *Id.*; see also *People v. Moore*, 2023 IL App (1st) 211421, ¶ 106 (a *pro se* defendant must be prepared to represent himself without standby counsel).

¶ 48   While standby counsel may be appointed to assist a defendant who chooses to represent himself, " 'even over the defendant's objection,' " *Gibson*, 136 Ill. 2d at 378, 383 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984)), the *pro se* defendant maintains the right to control the presentation of their case. *Id.* at 377-78. Accordingly,

> "standby counsel may assist a *pro se* defendant 'in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete,' and may also help 'ensure the defendant's compliance with basic rules of courtroom protocol and procedure.' " *Id.* at 378 (quoting *McKaskle*, 465 U.S. at 183).

Relevant criteria that a trial court may consider in deciding whether to appoint standby counsel include the nature and gravity of the charge, the expected factual and legal complexity of the proceedings, and the abilities and experience of the defendant. *Id*. at 380.

¶ 49    A trial court has the discretion to appoint standby counsel (*id.* at 375), and once it does so, retains broad discretion to determine the "nature and extent" of standby counsel's involvement in the case. *People v. Redd*, 173 Ill. 2d 1, 38 (1996).

¶ 50    Balewa concedes both that he failed to request standby counsel and that the court never declined to appoint standby counsel; however, he argues that the court's "blanket policy" against appointing standby counsel would have rendered any request for standby counsel futile. Thus, he lacked a meaningful opportunity to request standby counsel where the court rejected such assistance before he had a chance to make the request.

¶ 51    Balewa's assertions are not supported by the record. In the case at bar, Balewa did not request standby counsel. Thus, the court was never required to consider the *Gibson* factors, in light of Balewa's non-existent request for the appointment of standby counsel. Balewa cites no authority for the proposition that a court must engage in a *Gibson* factor analysis in the absence of a request for the appointment of standby counsel. Whether the court would have denied Balewa's request due to a "blanket policy" against such appointments is beyond the facts of this case. Balewa never requested that standby counsel be appointed.

¶ 52    Moreover, this is not a case where the court was unaware of its discretion to appoint standby counsel. On the contrary, the court repeatedly stated that it had the discretion to appoint standby counsel and was choosing not to do so. Nothing in the record rebuts the presumption that the court knew that it had the discretion to appoint standby counsel and properly applied the law. See *Ellison*, 2013 IL App (1st) 101261, ¶ 47 (in addressing an argument that the trial court had a

blanket policy of denying requests for standby counsel, we noted that "[t]he trial court is presumed to know and properly apply the law, and there is nothing in the record that affirmatively indicates that the judge did not properly apply the law").

¶ 53    During the initial colloquy regarding Balewa's decision to represent himself, the court stated that standby attorneys were "not a good idea." The court then informed Balewa that if he chose to proceed *pro se*, he would "be on [his] own all the way through" and Balewa indicated that he understood. At a subsequent court date, after admonishing Balewa again, the court stated that once trial began, Balewa could not change his mind and the court would not appoint standby counsel. The next month, the trial court reiterated it would not appoint standby counsel, as it "causes more difficulty than *** anything else." The court believed that it had "discretion to do so or not do so," and the court chose "not to do so." On the day of trial, the court repeated that it had the discretion "to appoint or not appoint standby counsel" and that it "will not appoint standby counsel at this point in time."

¶ 54    The record reflects that the court explained to Balewa the difficulty of self-representation and impressed upon him that he must be prepared to proceed without legal assistance. As aforementioned, "[t]he right of self-representation does not carry with it a corresponding right to legal assistance; one choosing to represent himself must be prepared to do just that." *People v. Simpson*, 204 Ill. 2d 536, 562 (2001). The trial court repeatedly explained that Balewa could proceed *pro se* or with counsel. See *People v. Trotter*, 254 Ill. App. 3d 514, 526 (1993) (finding no error where the trial court told the defendant his "choices were representation by counsel or *pro se*, not anything in between"); see also *People v. Williams*, 277 Ill. App. 3d 1053, 1059 (1996) (the appointment of standby counsel "frequently creates more problems than it solves and often is

- 15 -

viewed by defendants as an important factor in making the decision to proceed *pro se*" and "trial courts ought not act as 'enablers' for this unwise course of conduct").

¶ 55    Moreover, even if we were to agree with Balewa that the court failed to exercise its discretion, to quote the court in *People v. Ware*, 407 Ill. App. 3d 315 (2011), "we cannot find that defendant was prejudiced because, even if the trial court had exercised its discretion and denied defendant standby counsel, that decision would not have been an abuse of discretion." *Id.* at 351 (addressing whether the trial court's denial of standby counsel without mention of the *Gibson* factors was a "blanket policy" and an improper failure to exercise the court's discretion). As the *Gibson* court stated, "if it could be determined that the refusal to appoint standby counsel would not have been an abuse of discretion, there would be no purpose *** in remanding the cause for further proceedings solely on the ground that the trial judge failed to exercise his discretion." *Gibson*, 136 Ill. 2d at 380. Here, had Balewa requested standby counsel and the court applied the *Gibson* factors in denying that request, that decision would not have been an abuse of discretion.

¶ 56    The *Gibson* criteria for determining whether to appoint standby counsel includes the nature and gravity of the charge, the expected factual and legal complexity of the proceedings, and the abilities and experience of the defendant. *Id*. Balewa argues that the charges he faced were serious and that standby counsel could have assisted with (1) locating an unnamed witness mentioned in a police report, and (2) impeaching A.A. with prior statements.

¶ 57    Although the charges in this case included aggravated kidnapping and aggravated criminal sexual abuse, the facts and law involved were not complex. Balewa was charged with luring the 14-year-old victim into his apartment, preventing her exit, choking her, touching her breast, and asking her to touch his penis. The evidence comprised testimony from the victim and two other witnesses, forensic evidence, and photographs of A.A.'s injuries and Balewa's driver's license.

Additionally, Balewa was 34 years old, was not a stranger to criminal proceedings, had represented himself in a prior proceeding, and repeatedly refused the appointment of counsel. See, *e.g.*, *People v. Phillips*, 392 Ill. App. 3d 243, 265-66 (2009) (finding no abuse of discretion in the trial court's denial of standby counsel when the facts and law were not complex and the 41-year-old defendant was "no stranger to criminal proceedings").

¶ 58    To the extent Balewa argues standby counsel could have helped locate a witness mentioned in a police report, the record reveals that the name of the witness was not included in the report. Additionally, Balewa offered the court his own version of events through his opening statement, he cross-examined A.A. and highlighted the alleged inconsistencies and "implausibilities" of A.A.'s testimony in his closing argument. Ultimately, Balewa represented himself well enough that the trial court found him not guilty of 8 of the 11 counts of the indictment, including all the charged sex offenses.

¶ 59    Accordingly, we cannot find that the court would have abused its "considerable discretion" if it had denied a request for the appointment of standby counsel. *Ellison*, 2013 IL App (1st) 101261, ¶ 52. Consequently, "there would be no purpose now in remanding the cause for further proceedings solely on the ground that the trial judge failed to exercise his discretion." See *Gibson*, 136 Ill. 2d at 380.

¶ 60    Again, a defendant seeking plain-error review must first prove actual error. *Williams*, 2022 IL 126918, ¶ 49. We cannot conclude that, in the absence of Balewa's request for standby counsel, the court's failure to appoint standby counsel constituted an abuse of the court's discretion. Thus, Balewa has failed to prove error, and we must honor his procedural default. *Russell*, 2022 IL App. (2d) 190733, ¶ 44.

¶ 61                                    III. CONCLUSION

¶ 62    For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

¶ 63    Affirmed.